IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID LEE REESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:10-cv-538 |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff David Reese ("Reese") filed this action appealing the final decision of the Commissioner of Social Security, ("Commissioner"), that he was not eligible for disability insurance benefits and supplemental security income under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. On appeal, Reese contends that the ALJ erred by failing to give greater weight to the opinions of his treating physician, Dr. Richard Prokopchak. Reese also argues that the ALJ improperly evaluated his credibility and complaints of pain.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Following the filing of the administrative record and briefing, oral argument was held on December 15, 2011. As directed by the order of referral, the undersigned now submits the following report and recommended disposition. The undersigned concludes that the ALJ's decision is supported by substantial evidence. As such, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Dkt # 13) be **DENIED**, and the Commissioner's motion for summary judgment (Dkt # 17) be **GRANTED**.

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Reese bears the burden of proving that he is disabled within the meaning of the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) (2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through four, but the burden

shifts to the Commissioner at step five. *English v. Shalala*, 10 F.3d 1080, 1082 n.1 (4th Cir. 1993). The inquiry ceases if the Commissioner determines that the claimant is disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Once the claimant establishes a prima facie case for disability, the burden shifts to the Commissioner to establish that the claimant maintains a residual functional capacity ("RFC")[1], considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## FACTS AND ALJ FINDINGS

### Work History

Reese was born in 1983, (Administrative Record, hereinafter "R." 367), and is considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Reese attended special classes in high school, completed the eleventh grade, and did not obtain his GED. (R. 86.)

Between September 2006 and December 2007, Reese worked as a truck loader, warehouse worker, construction worker, and car washer. (R. 367-68.) Reese was last employed

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. The ALJ determines a claimant's RFC after considering all relevant evidence of the claimant's impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 416.929(a).

3

from September 2008 to January 2009 (during the time of his alleged disability) as a forklift operator for Blue Ridge Beverage[2]. (R. 367.)

## Claim History

Reese filed applications for supplemental security income benefits and disability insurance benefits claiming disability because of acute coronary syndrome and myocardial infarctions. (R. 263.) Reese initially alleged a disability onset date of November 1, 2006; but later amended his alleged onset date to January 1, 2008. (R. 263, 369.) On March 24, 2008, the Commissioner rejected Reese's application for benefits. (R.109-11.) On July 21, 2008, the Commissioner confirmed the denial of benefits on reconsideration. (R.121-27.) Administrative Law Judge Steven A. DeMonbreum held hearings on August 18, 2009 and December 16, 2009, during which Reese was represented by counsel. (R.33, 79.)

On January 29, 2010, the ALJ entered his decision denying Reese's claims for disability insurance benefits and supplemental security income. Using the five-step process, the ALJ found the following: 1) Reese did not work during the alleged period of disability (R.18); 2) Reese's coronary artery disease, status post myocardial infarctions and stenting are severe impairments that limit his ability to lift heavy objects, require him to walk at a slow pace and on level ground, limit his ability to perform more than occasional stooping, bending, crawling, crouching, kneeling, balancing, and climbing ramps or stairs, and limit his ability to be exposed to workplace hazards (R. 19); (3) these severe impairments did not meet a listing of disability under the Social Security Code (R.19); (4) Reese cannot return to his past relevant work (R.25); and (5) there are significant jobs in the national economy that Reese can perform given his RFC. (R. 27.)

---

[2] This job is considered an unsuccessful work attempt because there was a significant break in the continuity of work, the work attempt was less than 6 months, and Reese stopped working due to the limitations imposed by his impairment. (R. 18.) SSR 05-02.

4

Specifically, the ALJ found that Reese retains the RFC to perform sedentary work restricted to lifting and carrying ten pounds occasionally and five pounds frequently, standing and walking six hours in an eight hour day, sitting for six hours in an eight hour day, and no more than occasional stooping, bending, crawling, crouching, kneeling, balancing and climbing or ramps or stairs. (R. 19.) The ALJ also determined that Reese cannot work in an environment that exposes him to fumes, odors, dust, gases, and poor ventilation. The ALJ concluded on January 29, 2010, that there are significant jobs in the national economy that Reese can perform, and, therefore, that Reese was not disabled under the Act. (R. 27.) On October 13, 2010, the Appeals Council denied Reese's request for review, and this appeal followed. (R. 1-3.)

## Medical History

Reese suffered his first myocardial infarction in October 2006. Dr. Richard Prokopchak treated Reese at Lewis-Gale Medical Center and performed a left heart catheterization, which showed that Reese suffered from single vessel coronary artery disease with moderate disease in the mid-left anterior descending artery and moderate left anterior descending stenosis. Reese was released with instructions to continue medical treatment to reduce his cholesterol panel, and to take aspirin and Plavix. (R. 421-24.)

In March 2007, Reese was admitted to Trinity Health System emergency room for chest pain, and was diagnosed with an acute anterior wall myocardial infarction. A cardiac catheterization showed an ejection fraction of 40 percent, with total occlusion of the proximal segment of the left anterior descending artery. Reese underwent a successful stent of the left anterior descending artery. The medical records of this admission show that Reese continued to smoke one pack of cigarettes per day, and that he had a positive urine drug screen for cocaine. (R.429-446.)

5

Reese followed up with Dr. Prokopchak in April 2007, and denied any exertional chest pain. Dr. Prokopchak noted that Reese had been somewhat noncompliant with medical recommendations as evidenced by his positive urine drug screens and his continued smoking. Dr. Prokopchak advised Reese to stop smoking. (R. 457.)

In May 2007, Reese was admitted to Lewis-Gale Medical Center for four days, with a discharge diagnosis of acute coronary syndrome and acute myocardial infarction with an occluded left anterior descending artery. During this admission, Reese underwent a successful revascularization of the totally occluded mid-left anterior descending artery with balloon and stenting. Reese was again encouraged to stop smoking. (R. 458-461.)

Reese was evaluated by Bruce Mazurek, M.D. in February 2008. At that time, Reese stated that because of financial difficulties, he was not taking his medications, which included Plavix, aspirin, Coumadin, Benazepril and Metoprolol. Reese also stated that he was trying to quit smoking. Dr. Mazurek found that Reese had intermittent chest pain which "possibly sounds more stress/anxiety related than anything." (R. 498-500.) Dr. Mazurek recommended that Reese take his prescribed medications, and placed him on an ACE inhibitor and a beta-blocker. Significantly, Dr. Mazurek concluded that "[o]nce the claimant is on appropriate medical management and assuming he abstains from future cocaine and cigarette abuse, it is my feeling that he could be very functional and hold down a job." (R. 500.)

Robert McGuffin, M.D., a state agency physician, reviewed Reese's claim for benefits in March 2008, and found that Reese had the RFC to perform light work with occasional climbing, stooping, kneeling, crouching, and crawling, and should avoid even moderate exposure to hazards such as machinery and heights. (R. 521-26.)

In April 2008, Reese was admitted to Lewis-Gale Medical Center overnight for chest pain. Reese refused the medically recommended cardiolite stress test because he wanted to go home. The notes of Dr. Andrew Maiolo, who treated him at Lewis-Gale, indicated that Reese had not regularly taken several of his medications, including his beta blocker and Plavix, allegedly due to lack of finances. Dr Maiolo also noted that Reese continued to smoke cigarettes. (R.531, 568.)

In June 2008, Reese arrived at Lewis-Gale Medical Center with complaints of chest pain. Nitroglycerin improved Reese's symptoms, but he signed out against medical advice, despite the physician's recommendation for additional testing to rule out a myocardial infarction. (R. 583, 597.)

In July 2008, a second state agency physician, Richard Surrusco, M.D., reviewed Reese's claim for benefits and concurred with Dr. McGuffin's findings. (R. 666-72.)

In September 2008, Reese was admitted to Lewis-Gale Medical Center for abdominal pain. Reese was diagnosed with calculous cholecystitis. (R. 673.) A Hepatobiliary Iminodiacetic Acid (HIDA) scan was normal, except for a decreased ejection fraction of 33 percent. Reese indicated that he continued to smoke, and admitted drinking alcohol, which he had been advised to avoid. (R. 674.)

In February 2009, Reese presented to Lewis-Gale Medical Center with chest pain. A heart catheterization and bilateral selective coronary arteriography and left ventriculography performed by Dr. Prokopchak showed normal resting left heart hemodynamics, abnormal left ventriculography with at least moderately severe parasystolic function, and single vessel coronary disease. (R. 728.) Dr. Prokopchak diagnosed Reese as suffering from chest pain syndrome, and noted that it was highly unlikely that Reese had coronary insufficiency syndrome.

7

(R. 728.) Dr. Prokopchak concluded that Reese should continue on medical therapy, and again encouraged Reese to stop smoking. (R. 729, 737.)

During Reese's February 2009 hospitalization, Stephan J. Vivian, M.D., performed a consultative examination, and diagnosed Reese with chronic left ventricular systolic heart failure, with left ventricular ejection fraction of 35 percent from previous anterior wall myocardial infarction. Dr. Vivian noted that Reese did not qualify for a prophylactic implantable cardioverter-defibrillator (ICD) implantation. (R. 723.) Reese was also not a candidate for resynchronization therapy because he had no significant symptoms of congestive heart failure. Other treatment options were suggested, but Reese asked to be discharged home, to return to work and to follow up with Dr. Prokopchak. Dr. Vivian released Reese to return to work as of February 23, 2009, and again advised him to stop smoking. (R. 744-46.)

Reese followed up with Dr. Prokopchak in March 2009. He reported experiencing shortness of breath at times, but denied any presyncopal or syncopal symptoms. Dr. Prokopchak recommended that Reese continue medical therapy, and encouraged Reese to cease smoking and stay physically conditioned. (R. 788-89).

Reese failed to attend his next two scheduled appointments with Dr. Prokopchak. (R. 790-91.) Dr. Prokopchak next saw Reese in October 2009, noting that Reese's symptoms were maintained on aspirin, Zocor, Plavix, Metoprolol, and Lisinopril. Dr. Prokopchak again encouraged Reese to stay active with cardiovascular conditioning. (R. 838.)

In November 2009, Reese underwent a functional stress test and achieved 73 percent of his maximum predicted heart rate, and was able to exercise to 8.6 METs. (R. 849.)

On December 15, 2009, Dr. Prokopchak completed a Cardiac Residual Functional Capacity Questionnaire on Reese's behalf, stating that Reese would be able to lift/carry no more

than ten pounds, sit for three hours in an eight hour period, and stand for one hour in an eight hour period. Dr. Prokopchak indicated that Reese would need to rest for one hour in an eight hour period to relieve fatigue, and avoid extreme cold, extreme heat, high humidity, fumes, odors, dust, gases, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals. Dr. Prokopchak stated that Reese would be capable of a low stress job, but believed that Reese would miss work about two days a month due to his medical impairment. (R. 842-848.)

The Commissioner called Dr. H. C. Alexander, III to testify as a medical expert at the administrative hearing on December 16, 2009. Dr. Alexander reviewed Reese's file, including his medical records, and was present throughout Reese's testimony. (R. 59.) Dr. Alexander testified that Reese had the physical RFC to lift/carry ten pounds occasionally and five pounds frequently, had no limitations in sitting or standing, could walk one mile per hour at a slow pace on level ground, but that Reese could not climb ladders, ropes or scaffolds, or be exposed to hazards such as heights or dangerous moving machinery. (R. 62-66.) This opinion is substantially similar to the functional capacity expressed by Dr. Prokopchak, aside from the expected work absences.

A vocational expert also testified at the administrative hearing, and found that, given the restrictions set forth by Dr. Alexander, Reese could perform sedentary work as a telephone order clerk, general production worker, and material handler. (R. 71.)

## ANALYSIS

### Treating Physician Opinion

Reese first argues that the ALJ erred by failing to give greater weight to the opinion of his treating physician, Dr. Richard Prokopchak, and by failing to give specific reasons why Dr. Prokopchak's opinion was given lesser weight.

9

Treating physicians' opinions are given controlling weight if they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001), 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); SSR 96-2p.

When determining whether the treating physician's opinion is to be given controlling weight, it is appropriate for the ALJ to consider the evidence in support of the opinion, and to determine the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The ALJ must consider a number of factors regarding the treating physician's opinion, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to give specific reasons for the weight given to the treating physician's medical opinion, which are supported by evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

Reese's treating physician, Dr. Prokopchak, determined Reese capable of performing a low stress job, but less than full time work, due to fatigue. In determining Reese's RFC, the ALJ considered Dr. Prokopchak's opinion, but did not give it controlling weight. The ALJ gave two reasons for giving Dr. Prokopchak's opinion lesser weight. First, the ALJ found that Dr.

Prokopchak's opinion was inconsistent with all other opinion evidence in the record. Second, the ALJ found that Dr. Prokopchak's opinion was inconsistent with Reese's objective work history. (R. 25.) The ALJ gave greater weight to the opinion of the medical expert, Dr. Alexander, who found Reese capable of performing a limited range of sedentary work. Both Drs. Alexander and Prokopchak gave Reese the same New York Heart Association Functional Classification of II-III, as well as many of the same exertional restrictions.[3] Dr. Prokopchak's opinion differed from Dr. Alexander's only in the limitations on Reese's ability to stand and sit, and the requirement that Reese rest for one hour in an eight hour day.

Substantial evidence exists in the record to support the ALJ's decision to give Dr. Prokopchak's opinion lesser weight. As the ALJ noted, Dr. Prokopchak's opinion is contrary to all other medical opinion evidence in the record, which indicates that Reese is capable of performing at least a limited range of sedentary work.

State Agency medical consultant Dr. McGuffin examined Reese in March 2008, and found that he could perform light exertional work. State Agency medical consultant Dr. Surrusco made the same finding in July 2008. In February 2008, Dr. Mazurek also concluded that Reese could be functional and hold down a job if he was on appropriate medical management and abstained from future cocaine and cigarette abuse.

On February 23, 2009, Dr. Vivian examined Reese, and expressly released him to return to work, at Reese's request. Reese was working as a forklift operator at that time, which involved lifting up to forty pounds and standing on his feet most of the day. (R. 87.)

---

[3] Class II of The New York Heart Association functional classification system is described as "patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or angina pain." Class III is described as "patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or angina pain." The Criteria Committee of the New York Heart Association. *Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Great Vessels*. 253-56 (9th ed. Little, Brown & Co. 1994).

11

Dr. Alexander, who was present at the administrative hearing and reviewed Reese's medical records, found that Reese can perform a limited range of sedentary work. Dr. Alexander's opinion was the most restrictive of the non-treating physician opinions, and is the opinion given the greatest weight by the ALJ.

The court notes that the results of the November 2009 stress test were submitted to the ALJ after the administrative hearing on December 16, 2009. Thus, the stress test results were not reviewed by Dr. Alexander prior to his testimony. Accordingly, Dr. Prokopchak was the only medical provider aware of the stress test results when he rendered his opinion. This fact does not undermine the ALJ's assessment of Dr. Prokopchak's opinion. The ALJ considered the results of the stress test in addition to all of the medical evidence in the record when determining Reese's RFC, and found that the objective medical evidence did not support Dr. Prokopchak's opinion that Reese was incapable of sedentary work. (R. 23, 25.) The ALJ's decision is further supported by the fact that the results of the stress test are in contrast with Dr. Prokopchak's conclusion that Reese cannot perform even a limited range of sedentary work.[4]

Dr. Prokopchak's opinion is also inconsistent with Reese's objective work history. Reese worked at jobs with medium to high exertion levels after each myocardial infarction. (R. 367-68.) From September 2006 to December 2007, Reese worked as a truck loader, warehouse worker, self-employed construction worker, and car washer. (R. 367-68.) Most significantly, Reese worked for three months (during his period of alleged disability) as a forklift operator,

---

[4] The ability to exercise to 8.6 METs is consistent with the capacity of healthy adults age 20-39 to perform hard intensity physical activity. *Physical Activity and Health: A Report of the Surgeon General*. Atlanta, GA: U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Center for Chronic Disease Prevention and Health Promotion (1996).

which required him to lift up to forty pounds and stand on his feet most of the day.[5] (R. 87, 373.)
This work history is inconsistent with Dr. Prokopchak's opinion that Reese cannot perform even sedentary work on a full-time basis.

Further, although the ALJ did not give Dr. Prokopchak's opinion controlling weight, he did not simply disregard Dr. Prokopchak's opinion. The ALJ noted Dr. Prokopchak's concern that Reese could not engage in full time work due to fatigue. The ALJ accounted for that fatigue by limiting Reese to a reduced range of sedentary work.

For the foregoing reasons, the undersigned finds that there is substantial evidence to support the ALJ's decision not to give Dr. Prokopchak's opinion controlling weight and to provide greater weight to the opinion of Dr. Alexander.

### Evaluation of Reese's Symptoms

Reese also argues that the ALJ improperly evaluated his credibility and complaints of pain. At the administrative hearing, Reese testified that he has shortness of breath, dizziness and fatigue; that he can sit for only thirty to forty minutes, and stand for forty minutes to one hour; and that he must lie down twice a day for thirty minutes to two hours. (R. 50-51 .) The ALJ determined that objective medical evidence establishes that Reese suffers from some impairments which can reasonably be expected to produce his alleged symptoms. However, the ALJ concluded that Reese's statements concerning the intensity, persistence, and limiting effects of these symptoms are considered only partially credible.

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ is not required to accept

---

[5] Although this job does not constitute a successful work attempt for purposes of determining substantial gainful activity under 20 C.F.R. § 404.1572, it is evidence of Reese's physical activity during the time he was allegedly disabled.

13
Case 7:10-cv-00538-SGW-RSB   Document 22   Filed 01/24/12   Page 13 of 16   Pageid#: 930

Reese's subjective allegations of disabling symptoms, but must determine, through an examination of the objective medical record, whether Reese has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). Then the ALJ, having considered the entire record, must evaluate the intensity and persistence of the symptoms and the extent to which these symptoms affect Reese's ability to work. *Id*. at 594-95.

The ALJ's assessment of a claimant's credibility is entitled to great weight. The court should not interfere with the ALJ's assessment of the claimant when the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

In this case, the ALJ determined that Reese's statements concerning the limiting effects of his symptoms were only partially credible because 1) Reese was not fully compliant with treatment recommendations, and 2) Reese was able to engage in a wide array of activities.

The ALJ is correct to find that Reese's statements concerning the intensity, persistence and limiting effects of his symptoms were only partially credible. Reese's allegations of disabling symptoms are not supported by his medical records, which are replete with references to Reese's failure to comply with treatment recommendations. Reese's treating physician continuously advised him to stop smoking. But, Reese testified at the administrative hearing on December 16, 2009 that he continues to smoke five cigarettes per day. Reese continued to consume alcohol in September 2008 against his physician's recommendation to abstain. Reese was not taking his prescribed medications in February 2008, allegedly due to lack of funds,

despite his continued purchase and use of cigarettes. Finally, Reese refused medical testing in April 2008, and signed out of the emergency room against medical advice in June 2008.

Reese's consistent and ongoing failure to comply with treatment recommendations undermines his credibility with regard to his alleged symptoms. Reese's testimony regarding his limitations is contrary to his work history, and the absence of any significant functional limitations supports the ALJ's findings.

There is also evidence that Reese was able to engage in other activities that belie his testimony regarding the severity of his symptoms; including vacuuming, washing dishes, grocery shopping, performing laundry, and taking care of his self-care needs. (R. 295.) Reese argues that the ALJ improperly considered his ability to vacuum, given that he lives in a small trailer. However, the ALJ considered many other activities that Reese testified he was able to perform, aside from his ability to vacuum, including washing dishes, performing laundry, grocery shopping, and tending to his self-care needs. (R. 23.)

Given the above, there is substantial evidence in the record to indicate that Reese is only partially credible regarding the severity of his symptoms and the extent to which they limit his daily activities. The ALJ's determination that Reese is not totally credible is supported by the administrative record, and the ALJ explained the evidence that he considered in making his credibility determination. Based on the foregoing, the court finds that there is substantial evidence in the administrative record to support the ALJ's determination that Reese is only partially credible, and thus, to discount Reese's claims regarding the intensity, persistence and limiting effects of his medical conditions.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered :January 24, 2012

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge